APPEAL,CLOSED,JURY,TYPE–B

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:18–cv–00083–CRC</u>

ERWIN–SIMPSON et al v. AIR ASIA BERHARD et al

Assigned to: Judge Christopher R. Cooper

Cause: 28:1331 Fed. Question: Airline Crash

Date Filed: 01/12/2018

Date Terminated: 03/22/2019

Jury Demand: Plaintiff

Nature of Suit: 310 Airplane

Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**MARY ERWIN–SIMPSON**

represented by **Douglas Peter Desjardins**
PANGIA LAW GROUP
1717 N Street, NW
Suite 300
Washington, DC 20036
(202) 638–5300
Fax: (202) 393–1725
Email: <u>dpd@pangialaw.com</u>
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**KEVIN SIMPSON**

represented by **Douglas Peter Desjardins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**AIR ASIA BERHARD**

represented by **Bradley Reeves**
PILLSBURY WINTHROP SHAW
PITTMAN LLP
909 Fannin
Suite 2000
Houston, TX 77010
713–276–7600
Fax: 713–276–7673
Email: <u>bradley.reeves@pillsburylaw.com</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Sorenson**
PILLSBURY WINTHROP SHAW
PITTMAN LLP
Four Embarcadero Center
22nd Floor

San Francisco, CA 94111
415–983–1000
Fax: 415–983–1200
Email: jake.sorensen@pillsburylaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Paul Atkins**
PILLSBURY WINTHROP, SHAW
PITTMAN, LLP
1650 Tysons Boulevard
McLean, VA 22102
(703) 770–7900
Fax: (703) 770–7901
Email: william.atkins@pillsburylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**AIR ASIA X BERHARD**          represented by   **Bradley Reeves**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Sorenson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Paul Atkins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/12/2018 | 1 | | COMPLAINT against All Defendants with Jury Demand ( Filing fee $ 400 receipt number 0090–5286270) filed by MARY ERWIN–SIMPSON.(Desjardins, Douglas) (Entered: 01/12/2018) |
| 01/12/2018 | 2 | | CIVIL COVER SHEET by MARY ERWIN–SIMPSON filed by MARY ERWIN–SIMPSON.(Desjardins, Douglas) (Entered: 01/12/2018) |
| 01/12/2018 | | | Case Assigned to Judge Christopher R. Cooper. (jd) (Entered: 01/18/2018) |
| 01/17/2018 | 3 | | ERRATA *Civil Cover Sheet and Caption* by MARY ERWIN–SIMPSON, KEVIN SIMPSON 2 Cover Sheet filed by MARY ERWIN–SIMPSON, 1 Complaint filed by MARY ERWIN–SIMPSON. (Attachments: # 1 Corrected Civil Cover Sheet, # 2 Corrected Caption Page)(Desjardins, Douglas) |

| | | | |
|---|---|---|---|
| | | | (Attachment 1 replaced on 1/18/2018) (jd) (Entered: 01/17/2018) |
| 01/18/2018 | | | SUMMONS Not Issued as to AIR ASIA BERHAD, AIR ASIA X BERHAD. (jd) (Entered: 01/18/2018) |
| 02/06/2018 | 4 | | REQUEST FOR SUMMONS TO ISSUE filed by MARY ERWIN–SIMPSON, KEVIN SIMPSON. (Attachments: # 1 Summons, # 2 Summons)(Desjardins, Douglas) (Entered: 02/06/2018) |
| 02/07/2018 | 5 | | SUMMONS (2) Issued Electronically as to AIR ASIA BERHAD, AIR ASIA X BERHAD. (znmw) (Entered: 02/07/2018) |
| 03/29/2018 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. AIR ASIA X BERHAD served on 2/26/2018, answer due 3/19/2018 (Desjardins, Douglas) (Entered: 03/29/2018) |
| 03/29/2018 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. AIR ASIA BERHAD served on 3/14/2018, answer due 4/4/2018 (Desjardins, Douglas) (Entered: 03/29/2018) |
| 04/24/2018 | 8 | | NOTICE of Appearance by William Paul Atkins on behalf of All Defendants (Atkins, William) (Entered: 04/24/2018) |
| 04/24/2018 | 9 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jacob Sorensen, :Firm– Pillsbury Winthrop Shaw Pittman LLP, :Address– Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111. Phone No. – 415–983–1000. Fax No. – 415–983–1200 Filing fee $ 100, receipt number 0090–5440878. Fee Status: Fee Paid. by AIR ASIA BERHAD, AIR ASIA X BERHAD (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Atkins, William) (Entered: 04/24/2018) |
| 04/24/2018 | 10 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Bradley Reeves, :Firm– Pillsbury Winthrop Shaw Pittman LLP, :Address–909 Fannin, Suite 2000, Houston, TX 77010 bradley.reeves@pillsburylaw.com. Phone No. – 713–276–7600. Fax No. – 713–276–7673 Filing fee $ 100, receipt number 0090–5440882. Fee Status: Fee Paid. by AIR ASIA BERHAD, AIR ASIA X BERHARD (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Atkins, William) Modified to add address on 4/25/2018 (ztd). (Entered: 04/24/2018) |
| 04/24/2018 | 11 | | Consent MOTION for Extension of Time to File Answer *to Complaint* by AIR ASIA BERHAD, AIR ASIA X BERHARD (Attachments: # 1 Text of Proposed Order)(Atkins, William) (Entered: 04/24/2018) |
| 04/27/2018 | | | MINUTE ORDER granting 9 Motion for Leave to Appear Pro Hac Vice. Jacob Sorensen is admitted pro hac vice to practice in the United States District Court for the District of Columbia as additional counsel of record for Defendants. Signed by Judge Christopher R. Cooper on 4/27/2018. (lccrc3) (Entered: 04/27/2018) |
| 04/27/2018 | | | MINUTE ORDER granting 10 Motion for Leave to Appear Pro Hac Vice. Bradley Reeves is admitted pro hac vice to practice in the United States District Court for the District of Columbia as additional counsel of record for Defendants. Signed by Judge Christopher R. Cooper on 4/27/2018. (lccrc3) (Entered: 04/27/2018) |
| 04/27/2018 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER granting 11 Motion for Extension of Time to Answer Complaint. Defendants shall respond to the complaint on or before June 22, 2018. Signed by Judge Christopher R. Cooper on 4/27/2018. (lccrc3) (Entered: 04/27/2018) |
| 04/27/2018 | | | Set/Reset Deadlines: Answer due by 6/22/2018 (lsj) (Entered: 04/27/2018) |
| 06/22/2018 | 12 | | MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim Under 12(b)(1), (b)(2), and (b)(6)* by AIR ASIA BERHARD, AIR ASIA X BERHARD (Attachments: # 1 Memorandum in Support – Statement of Points and Authorities in Support of Motion to Dismiss Under 12(b)(1), (b)(2), and (b)(6), # 2 Exhibit A – Declaration of Soh Hsin Yee on behalf of Defendant, AirAsia Berhard, # 3 Exhibit B – Declaration of Francis Bateman on behalf of Defendant, AirAsia X Berhard, # 4 Text of Proposed Order)(Reeves, Bradley) (Entered: 06/22/2018) |
| 07/05/2018 | 13 | | Consent MOTION for Extension of Time to File Response/Reply as to 12 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim Under 12(b)(1), (b)(2), and (b)(6)* by MARY ERWIN–SIMPSON, KEVIN SIMPSON (Attachments: # 1 Text of Proposed Order Proposed Order)(Desjardins, Douglas) (Entered: 07/05/2018) |
| 07/09/2018 | | | MINUTE ORDER granting 13 Motion for Extension of Time. Plaintiffs shall file their Opposition to Defendants' Motion to Dismiss on or before July 20, 2018. Signed by Judge Christopher R. Cooper on 7/9/2018. (lccrc3) (Entered: 07/09/2018) |
| 07/09/2018 | | | Set/Reset Deadlines: Response to Dispositive Motions due by 7/20/2018. (zlsj) (Entered: 07/09/2018) |
| 07/20/2018 | 14 | | Memorandum in opposition to re 12 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim Under 12(b)(1), (b)(2), and (b)(6)* filed by MARY ERWIN–SIMPSON, KEVIN SIMPSON. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Text of Proposed Order)(Desjardins, Douglas) (Entered: 07/20/2018) |
| 07/27/2018 | 15 | | REPLY to opposition to motion re 12 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim Under 12(b)(1), (b)(2), and (b)(6) and Objections to Plaintiffs' Exhibits to Plaintiffs' Response* filed by AIR ASIA BERHARD, AIR ASIA X BERHARD. (Reeves, Bradley) (Entered: 07/27/2018) |
| 03/22/2019 | 16 | 8 | ORDER granting 12 Motion to Dismiss. See full Order for details. Signed by Judge Christopher R. Cooper on 03/22/2019. (lccrc3) (Entered: 03/22/2019) |
| 03/22/2019 | 17 | 9 | MEMORANDUM OPINION re: 16 Order granting Motion to Dismiss. Signed by Judge Christopher R. Cooper on 03/22/2019. (lccrc3) (Entered: 03/22/2019) |
| 04/22/2019 | 18 | 5 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 16 Order on Motion to Dismiss/Lack of Jurisdiction, 17 Memorandum & Opinion by MARY ERWIN–SIMPSON, KEVIN SIMPSON. Filing fee $ 505, receipt number 0090–6073097. Fee Status: Fee Paid. Parties have been notified. (Desjardins, Douglas) (Entered: 04/22/2019) |

| | |
|---|---|
| **MARY ERWIN-SIMPSON AND KEVIN SIMPSON,** | **)** |
| | **)** |
| **Plaintiffs,** | **)** |
| | **)** |
| **v.** | **)** |
| | **)** |
| **AIR ASIA BERHARD** | **)** |
| | **)** |
| **and** | **)** |
| | **)** |
| **AIR ASIA X BERHARD** | **)** |
| | |
| **Defendants.** | |

**<u>Civil Action No.</u> 1:18-cv-0083-CRC**

_____

## <u>NOTICE OF APPEAL</u>

Notice is hereby given this the 22nd day of April, 2019, that Plaintiffs Mary

Erwin-Simpson and Kevin Simpson hereby appeal to the United States Court of Appeals

for the District of Columbia Circuit from the final judgment entered in this action on the

22nd day of March, 2019 in favor of Defendants Air Asia Berhard and Air Asia X

Berhard, Doc. No. 16, granting Defendants' Motion to Dismiss, against Plaintiffs Mary

Erwin-Simpson and Kevin Simpson. This Notice of Appeal is against all Defendants, Air

Asia Berhard and Air Asia X Berhard by all Plaintiffs, Mary Erwin-Simpson and Kevin

Simpson.

/s/ Douglas P. Desjardins
Douglas P. Desjardins, Esq.
PANGIA LAW GROUP
1717 N Street NW
Washington, DC 20036
dpd@pangialaw.com
P: (202) 638-5300

**CLERK:** Please mail copies of the above NOTICE OF APPEAL to the following at the
addresses indicated:

Jacob R. Sorensen, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
P: (415) 983-1000
jake.sorensen@pillsburylaw.com

Bradley J. Reeves, Esq.
Pillsbury Winthrop, Shaw Pittman, LLP
909 Fannin, Suite 2000
Houston, TX, 77010
P: (713) 276-7600
bradley.reeves@pillsburylaw.com

William P. Atkins, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
1650 Tysons Blvd.
McLean, VA 22102
P: (702) 770-7900
 william.atkins@pillsburylaw.com

*Attorneys for Defendants AirAsia Berhard and AirAsia X Berhard*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Appeal was filed through

the ECF system and will be sent electronically to the record attorneys of the Defendants

as identified on the Notice of Electronic Filing:

Jacob R. Sorensen, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
P: (415) 983-1000
jake.sorensen@pillsburylaw.com

Bradley J. Reeves, Esq.
Pillsbury Winthrop, Shaw Pittman, LLP
909 Fannin, Suite 2000
Houston, TX, 77010
P: (713) 276-7600
bradley.reeves@pillsburylaw.com

William P. Atkins, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
1650 Tysons Blvd.
McLean, VA 22102
P: (702) 770-7900
william.atkins@pillsburylaw.com

*Attorneys for Defendants AirAsia Berhard and AirAsia X Berhard*

This the 22nd day of April, 2019.

/s/ Douglas P. Desjardins
Douglas P. Desjardins
PANGIA LAW GROUP
1717 N Street NW
Washington, DC 20036
dpd@pangialaw.com
P: (202) 638-5300

MARY ERWIN-SIMPSON, *et al.*,

        Plaintiffs,

        v.

Case No. 18-cv-00083 (CRC)

AIRASIA BERHAD, *et al.*,

        Defendants.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that [12] Defendants' Motion to Dismiss is GRANTED. The case shall be dismissed in its entirety.

This is a final appealable Order.

**SO ORDERED**.

 

 

                          *Christopher R. Cooper*

                        _____

                        CHRISTOPHER R. COOPER
                        United States District Judge

Date:   March 22, 2019

| | |
|---|---|
| **MARY ERWIN-SIMPSON, *et al*.,** | |
| Plaintiffs, | |
| v. | Case No. 18-cv-00083 (CRC) |
| **AIRASIA BERHAD, *et al*.,** | |
| Defendants. | |

## MEMORANDUM OPINION

Mary Erwin-Simpson alleges that she was injured on a flight from Kuala Lumpur to Phnom Penh operated by the Malaysia-based airline AirAsia Berhad ("AirAsia"). Erwin-Simpson and her husband have sued AirAsia and its affiliate, AirAsia X Berhad ("AirAsia X"), pursuant to the Montreal Convention, a multilateral treaty governing liability for injury suffered in international air travel. Each airline moves to dismiss for lack of both subject matter and personal jurisdiction. For the reasons explained below, the Court will grant the motions and dismiss the case.

### I.  Background

#### A.  Factual Background

According to her complaint, in March 2016, Mary Erwin-Simpson took an AirAsia flight from Kuala Lumpur, Malaysia to Phnom Penh, Cambodia. During the flight, a flight attendant spilled boiling water on her, causing a host of physical and emotional injuries, as well as the cancellation of the remainder of her planned trip. Compl. ¶¶ 10–14.

Erwin-Simpson and her husband Kevin have sued AirAsia and its affiliate, AirAsia X. Id. ¶¶ 5–6. According to uncontested declarations submitted by corporate representatives from both carriers, AirAsia is a low-cost Malaysian airline that serves destinations in Asia.

Declaration of Soh Hsin Yee ("Yee Decl."), Mot. Dismiss Ex. A ¶ 4. It does not operate any flights to the United States. Id. Nor does it maintain any "offices, locations[, or] terminals" in the United States or its territories. Id. ¶ 3. AirAsia X, in turn, is an "independent affiliate" of AirAsia that operates long-haul flights throughout Asia, Australia, New Zealand, and the Middle East. Declaration of Francis Bateman ("Bateman Decl."), Mot. Dismiss Ex. B ¶¶ 3–4. While it did not operate flights to the United States at the time of Ms. Erwin-Simpson's alleged injuries, AirAsia X currently provides service to and from Honolulu, Hawaii. Id. ¶ 4.

  B. <u>Legal Background</u>

  Erwin-Simpson seeks damages under the Montreal Convention, a self-executing treaty that governs numerous aspects of international air travel. <u>See</u> Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 ("Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106-45 (2000); <u>see also</u> Press Release, U.S. Dep't of State, "Entry Into Force of the 1999 Montreal Convention" (Nov. 4, 2003). Her husband seeks damages for loss of consortium.

  The Montreal Convention was designed to modernize and consolidate the law of international air travel. The treaty provides the sole remedy for personal injury and property damage on international flights between signatory States. <u>See</u> Montreal Convention, arts. 1(2), 17. As a treaty, it satisfies federal question jurisdiction. <u>See</u> U.S. Const. art. VI, cl. 2; <u>Best v. BWIA W. Indies Airways Ltd.</u>, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008). The Convention therefore confers subject matter jurisdiction on this Court for the claims it encompasses.

  Plaintiffs have brought their claims under Article 17 of the Convention, which provides that a "carrier is liable for damage sustained in case of . . . bodily injury of a passenger upon condition only that the accident which caused the . . . injury took place on board the aircraft[.]"

2

Montreal Convention, art. 17(1). The airlines have moved to dismiss the case for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim in regard to Mr. Simpson's loss of consortium claim. Plaintiffs oppose that motion, which is ripe for the Court's resolution.

## II.    Standard of Review

When evaluating a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted). But a court need not accept inferences unsupported by facts alleged in the complaint, nor must it accept plaintiffs' legal conclusions. See, e.g., Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). To defeat a 12(b)(1) motion, plaintiffs must show "by a preponderance of the evidence that the Court has subject matter jurisdiction[.]" Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004).

To defeat a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), meanwhile, "plaintiff[s] bear[] the burden of making a *prima facie* showing that the Court has personal jurisdiction over the defendant." Bigelow v. Garrett, 299 F. Supp. 3d 34, 40–41 (D.D.C. 2018) (citation omitted). They "must provide sufficient factual allegations, apart from mere conclusory assertions, to support the exercise of personal jurisdiction over the defendant." Howe v. Embassy of Italy, 68 F. Supp. 3d 26, 29 (D.D.C.

3

2014). The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." <u>Jerome Stevens Pharm., Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## III. Analysis

### A. <u>Subject Matter Jurisdiction as to AirAsia X</u>

The Court begins with AirAsia X's contention that the Court lacks subject matter jurisdiction over Erwin-Simpson's claim against it because it was not the carrier on which she was injured. Recall that the Montreal Convention provides that a "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft[.]" Montreal Convention, art. 17(1).

In interpreting the Montreal Convention's predecessor, the Warsaw Convention,[1] the D.C. Circuit explained that "[a]lthough the term 'carrier' is not defined in the Convention, the manner in which it is employed, particularly in the chapter titled 'Liability of the Carrier,' makes clear that the Convention's drafters were referring only to those airlines that actually transport passengers." <u>Kapar v. Kuwait Airways Corp.</u>, 845 F.2d 1100, 1103 (D.C. Cir. 1988); <u>see also</u> <u>Pflug v. Egyptair Corp.</u>, 961 F.2d 26, 31 (2d Cir. 1992) (interpreting Warsaw Convention to mean "that only the airline that actually transports the injured passenger can be held liable as 'the carrier'"). Because of the similarities between the two treaties, courts have repeatedly relied on Warsaw Convention jurisprudence to interpret parallel provisions of the Montreal Convention.

---

[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 (1934) ("Warsaw Convention").

See, e.g., Arif Naqvi v. Turkish Airlines, Inc., 80 F. Supp. 3d 234, 240 (D.D.C. 2015); Best, 581 F. Supp. 2d at 362–63.  Here, the relevant provisions of the Warsaw and Montreal Conventions are materially similar, compare Montreal Convention, art. 17, with Warsaw Convention, art. 17, and the Court sees no basis to depart from the D.C. Circuit's Warsaw Convention precedent. Other courts, in interpreting the Montreal Convention itself, have held that Article 17 liability attaches only to the actual carrier.  See Best, 581 F. Supp. 2d at 362–63 ("[O]nly the airline that actually transports the injured passenger can be held liable as 'the carrier.'").[2]

Declarations submitted from officials at each airline indicate that they are distinct corporate entities.  See Yee Decl. ¶ 3 (indicating that AirAsia's registered offices are located elsewhere from those of AirAsia X); Bateman Decl. ¶ 4 (stating that "AirAsia X is an independent affiliate of AirAsia Berhad").[3]  While Plaintiffs refer to the airlines in their complaint "[c]ollectively . . . as 'Air Asia,'" Compl. ¶ 6, they do not contest Defendants' evidence.  And their briefing—for reasons explained below in connection with AirAsia's motion to dismiss—acknowledges that the two are distinct carriers.  See, e.g., Opp'n at 5 (describing AirAsia X as "another carrier" with which AirAsia maintains a code-share agreement).  Plaintiffs also do not suggest that Erwin-Simpson was injured on an AirAsia X flight.  Because it was not

---

[2]  There are two situations where an airline other than the actual carrier can be held liable. See generally Selke v. German Wings, 261 F. Supp. 3d 666, 677–79 (E.D. Va. 2017) (discussing contracting and successive carrier liability); see also Montreal Convention, arts. 36, 39–41. Plaintiffs do not contend that either of the alternative forms of liability applies here, so the Court does not address them.

[3]  The Court also takes notice of the fact that the airlines trade separately on the Malaysian Stock Exchange.  See List of Companies, Bursa Malaysia, http://www.bursamalaysia.com/market/listed-companies/list-of-companies/main-market (last accessed Mar. 18, 2019).  They also have different Boards of Directors.  Compare Board of Directors, AirAsia Investor Relations, https://ir.airasia.com/directors.html (last accessed Mar. 18, 2019), with Board of Directors, AirAsia X Investor Relations, http://www.airasiax.com/directors.html (last accessed Mar. 18, 2019).

the carrier transporting Erwin-Simpson at the time of her alleged injuries, AirAsia X cannot be liable for those injuries under the Montreal Convention. Accordingly, this Court lacks subject matter jurisdiction over the claims against AirAsia X.

### B. Subject Matter Jurisdiction as to AirAsia

AirAsia, too, moves to dismiss for lack of subject matter jurisdiction. Whether the Montreal Convention confers subject matter jurisdiction over Erwin-Simpson's claims against AirAsia—undisputedly the actual carrier on which the injuries occurred—is a somewhat trickier question. Nevertheless, in consulting the text and the history of the Montreal Convention, the Court concludes that the treaty does not confer jurisdiction over Erwin-Simpson's claims against AirAsia either.

Ms. Erwin-Simpson brings her claims pursuant to Article 17 of the Montreal Convention, which governs a carrier's liability. To pursue these claims in the United States—notwithstanding that the injury took place on a flight from Malaysia to Cambodia—she invokes Article 33(2) of the Convention. Article 33(2) provides that actions for death or injury of a passenger "may be brought . . . in the territory of a State Party

> [1] in which at the time of the accident the passenger has his or her principal and permanent residence and
>
> [2] to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft or on another carrier's aircraft pursuant to a commercial agreement, and
>
> [3] in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement."

Montreal Convention, art. 33(2) (offset and indented for ease of reading).

So, for a plaintiff to bring an action in a signatory State (here, the United States), all three of the above jurisdictional requirements must be met. Defendants do not contest that Erwin-

Simpson's claim satisfies Article 33(2)'s first requirement: that at the time of the alleged accident her "principal and permanent residence" was in the United States. AirAsia contends, however, that neither of the other two requirements applies. The Court will begin, and end, with the third criterion—whether "[AirAsia] conducts its business of carriage of passengers by air from premises [in the United States] leased or owned by [AirAsia] or by another carrier with which [AirAsia] has a commercial agreement."

As noted above, AirAsia has submitted an unrebutted declaration from a corporate representative indicating that the carrier itself has no physical presence in this country: It "does not provide service to any destination or terminals located in the United States or any territory of the United States." Yee Decl. ¶ 4. Nor "does [it] have any offices, locations, [or] terminals . . . within the United States or any territory of the United States." Id. ¶ 3. This lack of physical contacts, AirAsia contends, defeats application of Article 33(2)'s third prong and thus precludes the exercise of subject matter jurisdiction over the Ms. Erwin-Simpson's claims. The Court agrees.

Unfortunately, there is a dearth of case law on Article 33(2)'s second two prongs. See B. Soyer & G. Leloudas, Carriage of Passengers by Sea: A Critical Analysis of the International Regime, 26 Mich. St. Int'l L. Rev. 483, 524 (2018) (noting that "[c]ourts have not examined the 'commercial presence' requirements" of Article 33(2)). So the Court is mainly left to interpret the treaty on a blank slate. When interpreting a treaty, courts "begin with the text of the treaty and the context in which the written words are used." E. Airlines, Inc. v. Floyd, 499 U.S. 530, 534 (1991) (internal quotation marks omitted). If the text is ambiguous, courts "may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." Id. at 535 (internal quotation marks omitted). Treaties

7

must be interpreted to give effect to the shared understanding and expectations of the contracting parties. See El Al Isr. Airlines v. Tsui Yuan Tseng, 525 U.S. 155, 160 (1999). As part of this process, courts consider interpretations by the political branches that helped form the treaty. See Kolovrat v. Oregon, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight."). In short, when interpreting any ambiguity in the Montreal Convention's text, the Court must consider the international negotiations that yielded the treaty and give weight to the political branches' interpretations of its provisions.

The Court naturally begins with the relevant text. Again, Article 33(2)'s third element requires that the forum State for the action be one "in which th[e] carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement." Montreal Convention, art. 33(2). The text plainly requires that the airline engage in some aspect of its business in the forum State. There are strong indications that this engagement must manifest itself through a physical presence there, either directly or through an agreement with another carrier. First, the standard dictionary definitions of the word "premises" are limited to physical locations. See, e.g., Premises, Black's Law Dictionary 1371 (10th ed. 2014) ("A house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses[.]"); Premises, Merriam-Webster's Dictionary of Law ("a building or part of a building usually with its appurtenances (such as grounds)"). Second, the references to the leasing or owning of a premises are more consistent with a physical space from which the carrier operates, as opposed to some intangible connection. While the third element of Article 33(2) permits the exercise of jurisdiction in cases where

another carrier leases or owns the premises, it still requires the carrier being sued to operate some aspect of its business from those premises.

Secondary sources support the Court's reading.  <u>See</u> 1 Kreindler, <u>Aviation Accident Law</u> § 10.09 (2018) (noting that an injured passenger can bring suit in her "place of domicile, assuming the airline operates flights to that jurisdiction and *has a physical presence there*, either directly or through code-share partners") (emphasis added); Charles Krause & Kent Krause, 1 <u>Aviation Tort & Reg. Law</u> § 12:14 (Sept. 2017 update) (noting a "defendant carrier would not be subject to [Article 33(2) jurisdiction] unless it conducted business and passenger services in the [forum State] either directly or through another carrier with which it has a commercial agreement"); George N. Tompkins, Jr., <u>Liability Rules Applicable to International Air Transportation as Developed by the Court in the United States: From Warsaw 1929 to Montreal 1999</u> 245 (2010) (noting that for Article 33(2) to confer jurisdiction, the carrier must "ha[ve] a specified business presence" in the forum state); Devendra Pradhan, <u>The Fifth Jurisdiction Under the Montreal Liability Convention: Wandering American or Wandering Everybody?</u>, 68 J. Air L. & Com. 717, 723–24 (2003) (tracking development of treaty language, including suggestions that a carrier must have "a place of business" or an "establishment" in the jurisdiction, before settling on current language which "envisioned a significant presence" in the forum State).

To the extent the text leaves any lingering ambiguity about what constitutes a "premises," the ratification history of the Montreal Convention buttresses the Court's conclusion that Article 33(2) contemplates a physical presence.  The requirement of a U.S. presence reflects a careful balancing of interests in the Montreal Convention.  Article 33(2) was designed to fill a jurisdictional gap left by the Warsaw Convention, the Montreal Convention's predecessor. Specifically, the Warsaw Convention allowed suits for injuries in four jurisdictions: the carrier's

9

domicile, its principal place of business, where it had an establishment through which the ticketing contract was made, and the flight's destination. See Warsaw Convention art. 28(1).[4] Under the Warsaw Convention, "[e]ven if the airline[] had extensive operations in the United States, [Americans injured on international flights] were not permitted to bring suit in the United States, but were forced to either file actions in foreign countries or give up their legal rights." 1 Kreindler, Aviation Accident Law § 10.09.

In negotiating the Montreal Convention, the United States sought to correct this perceived deficiency by allowing Americans injured abroad to sue in U.S. courts, leading to the eventual Article 33(2)—commonly known as the "fifth jurisdiction" for airline liability. Treatises and other secondary sources explain that this was a singularly important issue for the United States. See id.; see also Tompkins, supra at 245 ("[T]his 'fifth jurisdiction' was an absolute requirement for any new Convention to be acceptable and ratifiable by the United States."). Statements of Executive Branch officials involved in the treaty negotiations show likewise. See, e.g., S. Exec. Rpt. No. 108-8 ("Senate Report"), at 17 (2003) (statement of Deputy Assistant Sec'y of State John R. Byerly); Letter of Submittal from Deputy Sec'y of State Strobe Talbott to Pres. William J. Clinton ("Letter of Submittal") XII, *reprinted in* S. Treaty Doc. No. 106-45 (2000) ("Article 33[] reflects the U.S. success in achieving a key U.S. objective with regard to the Convention.")

---

[4] The Montreal Convention, too, allows an action for damages in any of these four jurisdictions. See Montreal Convention, art. 33(1). Plaintiffs here do not contend that jurisdiction is proper in the United States under that provision. See Compl. ¶ 2 (noting Article 33 is applicable because of "the principal and permanent residence" of Erwin-Simpson); Opp'n at 4 ("Defendants correctly point to Article 33(2) of the Montreal Convention as the basis for the Plaintiffs' subject-matter jurisdiction.").

10

The fifth jurisdiction was undoubtedly designed to sweep broadly. The Montreal Convention generally—and the fifth jurisdiction in particular—"favors passengers rather than airlines." Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004); see Montreal Convention, pmbl. (stating one of the treaty's purposes is to "ensur[e] protection of the interests of consumers in international carriage by air"). "[I]n most cases, United States citizens and permanent residents will be able to maintain actions under the Montreal Convention in United States courts because . . . most airlines operate or conduct business in the United States either directly or through a commercial agreement with another carrier." In re W. Caribbean Airways, S.A., 619 F. Supp. 2d 1299, 1327 (S.D. Fla. 2007); see also Senate Report at 13 ("This provision will ensure in the vast majority of cases that an injured American passenger . . . will be able to bring action in a U.S. court."); Letter of Submittal at XII–XIII ("Given the number of carriers whose operations in the United States satisfy these criteria, this fifth jurisdiction provision should ensure that nearly all U.S. citizens and other permanent residents of the United States have access to U.S. courts to pursue claims under the Convention.").

But the bounds of the fifth jurisdiction are not limitless. While the United States sought a provision to allow its citizens to bring suit domestically for injuries sustained on international flights, many countries opposed the creation of the fifth jurisdiction. This opposition "stemmed from the reluctance of developing countries whose carriers conducted no operations to or in the United States to agree that such a carrier should be subjected to jurisdiction in the United States any time a U.S. citizen was injured while traveling on one of the carrier's planes." Hornsby v. Lufthansa German Airlines, 593 F. Supp. 2d 1132, 1138 (C.D. Cal. 2009) (citing Charles Krause & Kent Krause, 1 Aviation Tort & Reg. Law §§ 11:14, 11:17 (2008)). See also 1 Kreindler,

11

Aviation Accident Law § 12.17 n.16 (noting that France "announced it was prepared to accept the concept of the fifth jurisdiction subject to certain stringent conditions" (citation omitted)).

Article 33(2), then, reflects a carefully negotiated balance in which signatories agreed that the fifth jurisdiction would only cover "those carriers who 'operate services' *within* a jurisdiction." Hornsby, 593 F. Supp. 2d at 1138 (emphasis added). Article 33(2)'s third requirement was designed to ensure that the carrier has a "suitable presence" in the forum State before it can be subject to that State's jurisdiction. See Pradhan, supra at 723–24; see also Tompkins, supra at 245 (noting that the fifth jurisdiction is available in a given State so long as "the carrier has a specified business presence there"). This "presence" requirement reflects a compromise between the United States interest in allowing Americans injured on international flights to sue in the U.S., on the one hand, with other countries' concerns about too broad a jurisdictional reach, on the other.

The political branches' discussion of the Montreal Convention supports this understanding. Both the Executive and Legislative branches celebrated the expansion of jurisdiction, explaining that it "w[ould] allow access to U.S. courts for virtually all American accident survivors and the families of American victims of airline accidents." Senate Report at 17 (statement of Deputy Assistant Sec'y of State John R. Byerly). Still, the ratification history suggests a balance. The Senate Report accompanying the Convention, for example, explains that Article 33(2) allows suit in a passenger's country of principal and permanent residence, "provided that two additional conditions are met," including that "the carrier conducts business in that country." Id. at 13. The State Department's Letter of Submittal of the Treaty to President Clinton, included in his message to the Senate, contained similar language. See Letter of Submittal XI.

12

In sum, the text of Article 33(2), its ratification history, and the manifest intent of its signatories all point to the conclusion that Article 33(2)'s requirement that a carrier conduct business from "premises" in the forum means that an airline must conduct business from some physical location in the U.S. before a court here can hear a personal injury claim stemming from international travel on that airline.

Plaintiffs' cursory effort to escape this conclusion is unavailing.[5] Plaintiffs do not suggest, let alone present evidence, that AirAsia itself serves American destinations or otherwise conducts business from physical locations in the United States. Rather, they contend that jurisdiction lies over claims against AirAsia by virtue of the fact that *AirAsia X* operates flights to and from Honolulu. That is so, Plaintiffs argue, because Article 33(2)'s third prong refers to a carrier's presence in the forum through another "carrier with which it has a commercial arrangement" and "AirAsia undisputedly maintains a commercial relationship with AirAsia X." Opp'n at 5.

But that argument glosses over the language and structure of the treaty. Again, Article 33(2) requires that the "*carrier* conduct[] its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement." Montreal Convention, art. 33(2) (emphasis added). The reference to a commercial agreement permits jurisdiction where a carrier conducts its business from another carrier's premises. But it still requires the actual carrier to conduct its business in the jurisdiction. Plaintiffs do not allege that AirAsia itself conducts business from premises in the United States. Their sole theory, rather, is that jurisdiction lies because *AirAsia X* flies to Hawaii

---

[5] Plaintiffs devote less than a page of their Opposition to challenging AirAsia's argument that jurisdiction is foreclosed by Article 33(2)'s third requirement.

and conducts business there. Plaintiffs' reading of this provision would thus permit jurisdiction when a carrier has a commercial relationship with another airline if that *other* airline conducts business in the forum state. That reading is at odds with the treaty text.

Moreover, Plaintiffs' interpretation would collapse Article 33(2)'s third prong with its second, which requires the carrier to operate services in the forum, on its own or on another carrier's aircraft pursuant to a commercial agreement. If an airline operates flights on its own aircraft to or from a signatory State, then it necessarily conducts business of some kind from a physical location there: sales at a ticket counter, repairs in a hangar, or business otherwise necessary for flights to the forum State. But if the airline operates flights only indirectly—*e.g.*, through a code-share agreement with another airline—then the prospect that the airline conducts its own business from premises in that country may be significantly diminished. In such a situation, the third prong of Article 33(2) requires more: a physical business presence in the forum State, even if from premises owned or leased by another carrier.

Read together, then, the second and third prongs of Article 33(2) mean that a carrier that *indirectly* operates flights to or from the forum country must *directly* conduct some of its business from premises there. Under Plaintiffs' interpretation, however, AirAsia's commercial agreement with AirAsia X suffices for jurisdiction because *AirAsia X* operates flights to the U.S. and conducts business here. The third prong must demand more. To read Article 33(2) in any other way would negate the "and" that links the three elements and render the third prong superfluous. See Delaware Dep't of Nat. Res. & Envtl. Control v. EPA, 895 F.3d 90, 99 (D.C. Cir. 2018) ("[W]e strive to construe statutes 'so that effect is given to all [their] provisions, so that no part will be inoperative or superfluous, void or insignificant.'" (quoting Corley v. United States, 556 U.S. 303, 314 (2009)); Sullivan v. Kidd, 254 U.S. 433, 439 (1921) ("[A]ll parts of a

14

treaty are to receive a reasonable construction with a view to giving a fair operation to the whole.").

Though their argument is not well developed, Plaintiffs hint at a second interpretation of Article 33(2)'s third prong that arguably could support subject matter jurisdiction. Plaintiffs point out that AirAsia "directly markets to consumers in the United States through [its] website," including "targeted promotions and the listing of airfare and destinations in US Dollars." Opp'n at 5. Plaintiffs make no effort to tie these internet marketing activities to the actual language of Article 33(2). Had they done so, however, they might have argued that the article's requirement that the carrier conduct business from premises in the forum is capacious enough to include "virtual premises" such as a website.

Even giving Plaintiffs the benefit of that argument, the Court rejects it. As previously explained, the text and negotiation history of the Montreal Convention strongly support the conclusion that traditional physical premises are required to satisfy Article 33(2)'s third requirement. And, with one exception that the Court could locate, the secondary sources and commentators agree. See supra at 9. But see Pablo Mendes de Leon and Werner Eyskens, The Montreal Convention: Analysis of Some Aspects of the Attempted Modernization and Consolidation of the Warsaw System, 66 J. Air L. & Com. 1155, 1163 (2001) ("[P]remises in which the sued carrier conducts the business of carriage of passengers by air may easily extend to websites in the event of tickets being offered on-line, or to call centers through which tickets are offered.").

Embracing the theory that a website accessible to Americans suffices for subject matter jurisdiction would stretch the fifth jurisdiction too far. Virtually every airline presumably has a website accessible in the United States on which tickets can be purchased. Many of them likely

15

target their on-site banner advertising to the location in which a website is accessed.  But exercising subject matter jurisdiction over those airlines would disregard the most natural understanding of Article 33(2) and upset the careful political balance it strikes.[6]

The broad scope of the Montreal Convention's fifth jurisdiction is in keeping with the treaty's recognition of passenger's rights.  Jurisdiction under the Convention has its limits, however, and the Plaintiffs here ask the Court to exceed them.  Plaintiffs' position is that AirAsia X's provision of service to Honolulu is sufficient to establish that *AirAsia* conducts business from premises in the United States.  The Convention does not allow the Court to hear personal injury claims against a foreign airline that does not operate any physical aspect of its business, directly or indirectly, in the United States.  The Court recognizes that the United States sought to ensure that Americans injured on airlines could bring suit here, even if the airlines do not fly here directly.  But to sustain such a suit, a plaintiff must show that the carrier itself is somehow connected to the United States.  This is not necessarily a high bar, and reasonable minds can disagree about the precise level of contacts that a carrier must have—and how direct they must be—for the Convention to confer subject matter jurisdiction.  But it is clear to the Court that the bar is not so low as to permit jurisdiction based solely on *another* carrier's activities in the

---

[6]  Hornsby v. Lufthansa German Airlines, which Plaintiffs cite, does not support them on this point.  Hornsby stated that the fifth jurisdiction requires an airline to have "sufficient contacts with the United States."  593 F. Supp. at 1139.  But that case focused entirely on whether the plaintiff had her principal and permanent place of residence in the United States, not on the defendant's American presence, which was immaterial to the holding.  Hornsby explained that its analysis of Article 33(2) need not consider more than the plaintiff's residence precisely because "[t]he other concerns of the treaty negotiators"—*i.e.*, the extent of the carrier's U.S. contacts—were "not implicated."  Id.  Thus, Hornsby does not support Plaintiffs' position here.  To the contrary, its discussion of Article 33(2)'s development only emphasizes that the provision's drafters were concerned with a jurisdictional reach that would hale into U.S. courts airlines who "conducted no operations to or in the United States."  Id. at 1138.

16

United States. In this case, beyond a terse reference to AirAsia's website, Plaintiffs rely exclusively on AirAsia X's presence in the United States. Because Plaintiffs have neither alleged nor provided evidence that *AirAsia* operates any aspect of its business from premises in the United States, they have not met their burden to establish subject matter jurisdiction. The Court must therefore dismiss the case.[7]

## C. Personal Jurisdiction

The Court ordinarily would end its analysis after finding that it lacks subject matter jurisdiction over a case. Given the lack of case law interpreting Article 33(2)'s third element, however, the Court here will proceed to AirAsia's alternative ground for dismissal: lack of personal jurisdiction. That issue turns out to be more straightforward. Courts may exercise either specific or general personal jurisdiction over a defendant. See Livnat v. Palestinian Auth., 851 F.3d 45, 57 (D.C. Cir. 2017). Specific jurisdiction is appropriate where a claim arises from a defendant's activities in the forum. See id. General jurisdiction, meanwhile, allows a court to hear claims against a defendant whether or not those claims are tethered to the defendant's activities in the relevant forum. See id.

Here, Plaintiffs invoke general jurisdiction. They do not plead any facts to suggest that AirAsia's activities in the District of Columbia led to Ms. Erwin-Simpson's injury,[8] nor do they

---

[7] Because it will dismiss Erwin-Simpson's claim for lack of subject matter jurisdiction, the Court will also dismiss her husband's loss of consortium claim. "[A] loss of consortium claim is a derivative cause of action," Miango v. Democratic Republic of Congo, 288 F. Supp. 3d 117, 131 (D.D.C. 2018), meaning its viability rises and falls with the viability of the predicate claim, see, e.g., Turner v. Wash. Metro. Area Transit Auth., 701 F. Supp. 2d 61, 72 (D.D.C. 2010) ("[T]o the extent his claim for loss of consortium is predicated upon his wife's claims for negligent training, supervision and retention, which the Court has dismissed above for lack of subject matter jurisdiction, Williams' claim for loss of consortium also fails.").

[8] Nothing in Plaintiffs' complaint suggests that the alleged injuries arose from AirAsia's maintenance of a website accessible in the District of Columbia. To the contrary, even in their

17

attempt to tie those activities to the District of Columbia's long arm-statute. Instead, they maintain that "regardless of whether the defendant's contacts gave rise to the claim in the particular case, so long as the defendant has sufficiently systematic and continuous contacts with the forum state . . . it is fair for the forum's courts to entertain any claim against the entity." Opp'n at 5–6 (citing Brooks v. Harris, 808 F. Supp. 2d 206, 208 (D.D.C. 2011)). Applying that standard, Plaintiffs insist that, because AirAsia maintains a website accessible in the District of Columbia, it would be appropriate for the Court to exercise general personal jurisdiction over the airline.

Plaintiffs' contentions fail to recognize that the Supreme Court has recently circumscribed courts' exercise of general personal jurisdiction. The cases regarding website accessibility on which Plaintiffs principally rely precede the Court's decisions in Daimler AG v. Bauman, 571 U.S. 117 (2014), and Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011). As Daimler made clear, due process permits a court to exercise general jurisdiction only if the "corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." 571 U.S. at 139 (quoting Goodyear, 564 U.S. at 919).

Daimler and Goodyear undercut Plaintiffs' reliance on the accessibility of AirAsia's interactive website. True, prior to these decisions, the D.C. Circuit had held that a "foreign corporation's maintenance of a website that is accessible in the District can satisfy general jurisdiction requirements," if the website is interactive and used in a continuous and systematic way. FC Inv. Grp. LC v. IFX Markets, Ltd., 529 F.3d 1087, 1092 (D.C. Cir. 2008); cf. Gorman

---

briefing, Plaintiffs do not affirmatively state that Ms. Erwin-Simpson purchased her ticket on AirAsia's website, saying only that AirAsia "solicited" her business here. Opp'n at 6. In any event, Plaintiffs' briefing is premised entirely on general personal jurisdiction. See id. at 5–7.

18

v. Ameritrade Holding Corp., 293 F.3d 506, 510–11 (D.C. Cir. 2002). But, as other courts in the District have recognized, the Supreme Court's subsequent decisions have abrogated that reasoning. See, e.g., Triple Up Ltd. v. Youku Tudou Inc., 235 F. Supp. 3d 15, 24 n.5 (D.D.C. 2017); Freedman v. Suntrust Banks, Inc., 139 F. Supp. 3d 271, 280 (D.D.C. 2015); cf. Alkanani v. Aegis Def. Servs., LLC, 976 F. Supp. 2d 13, 29 (D.D.C. 2014). Now, the relevant inquiry is no longer simply whether the use of AirAsia's website in the District of Columbia was "continuous and systematic," but whether the use was such that the corporation is "essentially at home" in the forum. Plaintiffs have not alleged or pled any facts to suggest that District residents access or purchase tickets on AirAsia's website in such a way that would make the airline "essentially at home" here. The website is accessible throughout the world, and there is no basis to infer that, based on the mere accessibility of the website, AirAsia is more "at home" in the District of Columbia than anywhere else in the United States.

Perhaps recognizing that they have pled no facts other than website interactivity and accessibility to establish general personal jurisdiction, Plaintiffs ask the Court to allow them to conduct jurisdictional discovery. Granting Plaintiffs' request is "justified only if [they] reasonably demonstrate[] that [they] can supplement [their] jurisdictional allegations through discovery." Exponential Biotherapies, Inc. v. Houthoff Buruma N.V., 638 F. Supp. 2d 1, 11 (D.D.C. 2009). Here, again, Plaintiffs overlook the consequences of Daimler and Goodyear. They seek to determine "the frequency and volume of Defendants' contacts with the District of Columbia" through their website to show that the contacts were "continuous and systematic." Opp'n at 7. But, as explained, that is no longer the relevant inquiry. An exercise of general personal jurisdiction is appropriate only if the website usage was such that AirAsia is at home in the District. Plaintiffs have put forth no suggestion that this is the case and, accordingly, have

not demonstrated "a good faith belief that . . . discovery will enable [them] to show that the court has personal jurisdiction over the defendant." Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998). As another court in this District explained when faced with a similar request following Daimler and Goodyear: "At best, the additional discovery sought by Plaintiff would demonstrate that Defendants engage in a substantial, continuous, and systematic course of business in the District of Columbia, which is explicitly insufficient under Daimler to establish general jurisdiction." Freedman, 139 F. Supp. 3d at 281. Put simply, "Plaintiff[s] ha[ve] suggested no way in which additional discovery would yield information enabling them to show that Defendants are 'essentially at home' in the District of Columbia." Id.[9]

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

*Christopher R. Cooper*

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: March 22, 2019

---

[9] As an alternative, Plaintiffs request transfer of the case to the District of Hawaii, on the theory that Defendants' activities there confer general personal jurisdiction. However, they support this request with facts regarding *AirAsia X's* presence in Hawaii, not AirAsia's. As discussed, because AirAsia X was not the carrier involved, the Montreal Convention does not confer subject matter jurisdiction on a federal court and transfer is therefore precluded. See, e.g., Tootle v. Sec'y of the Navy, 446 F.3d 167, 173 (D.C. Cir. 2006) ("[Having dismissed] for want of subject matter jurisdiction . . . the trial court was without authority to transfer the case.").

20